IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KISLEV PARTNERS, L.P.,<br>by and through Nesim Bahar,<br>A Partner Other Than the Tax Matters Partner<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 07-625<br><br>Judge Mary Ellen Coster Williams |

JOINT PRELIMINARY STATUS REPORT

Plaintiff, Kislev Partners, L.P. ("Kislev"), and Defendant, the United States, by and through their respective undersigned counsel of record, and pursuant to Appendix A of the Rules of the United States Court of Federal Claims, file this Joint Preliminary Status Report and state as follows:

Following the filing of the Government's Answer in this matter, the parties, by and through their counsel, discussed the items outlined in Subsections II and III (paragraphs 3, 4 and 5) of RCFC Appendix A. In specific response to the items identified in Subsection III (paragraph 4), the parties report:

(a) **Does the court have jurisdiction over the action?**

**Plaintiff's Response**: Yes. The Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b). The Plaintiff has met all the requirements of RCFC Appendix F, Rule 1(c)(1).

**Defendant's Response**: Jurisdiction, if it exists, arises under 26 U.S.C. § 6226(e) and 28 U.S.C. § 1508. This is a TEFRA partnership proceeding subject to the provisions of RCFC Appendix F. The defendant contends that the jurisdictional deposit requirements of § 6226(e) and Treas. Reg. § 301.6226(e)-1 and § 6231(a)(10) (defining "indirect partner") have not been satisfied.[1] The defendant is proposing to file a motion to dismiss for lack of jurisdiction on or before May 16, 2008 with respect to this issue.

(b) **Should the case be consolidated with any other case and the reasons therefore?**

**Plaintiff's Response**: No.

**Defendant's Response**: No.

(c) **Should trial of liability and damages be bifurcated and the reasons therefore?**

**Plaintiff's Response**: No.

**Defendant's Response**: This is a TEFRA partnership proceeding to review the determinations of the Internal Revenue Service set forth in a Notice of Final Partnership Administrative Adjustments (FPAA). As such, there are no distinct "liability" and "damages" issues before the Court.

(d) **Should further proceedings in this case be deferred pending consideration of another case before the court or any other tribunal**

---

[1] Although reference is made in this Report to "partners," the "partnership," and various purported entities, Defendant does not concede that, under the applicable law, a viable partnership or the alleged entities existed.

**and the reasons therefore?**

**Plaintiffs' Response[2]:** Plaintiff reserves the right to request that the proceedings be deferred pending consideration of other similar cases in this Court and other courts, but does not presently anticipate making such a request.

**Defendant's Response:** The United States Attorney's Office for the Southern District of New York has requested that it be kept informed of the proceedings in this case due to possible impact on other tax investigations that office is conducting. At this time, there is nothing upon which to base a motion for stay in this case, although that may change as both this case and the tax investigations continue.

(e) **In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefore and the proposed duration?**

**Plaintiff's Response:** Not applicable.

**Defendant's Response:** Not applicable.

(f) **Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder.**

**Plaintiff's Response:** Plaintiff does not presently anticipate joining any additional parties.

---

[2] Defendant has insisted on filing as its "response" several paragraphs meant to prejudice this matter by asserting that Plaintiff engaged in an abusive tax shelter. Plaintiff respectfully submits that these posturings are gratuitous in the context of a joint status report. Plaintiff disagrees with any direct or indirect characterization by Defendant asserting that Plaintiff engaged in criminal activity or an abusive tax shelter. Plaintiff objects to Defendant's characterizations in its responses to paragraphs (d) and (h), but will not undertake to respond point by point at this time, unless the Court requests such a response.

**Defendant's Response:** Defendant does not presently anticipate joining any additional parties. Defendant further states that the time permitted for a partner to intervene as a participating partner has expired pursuant to RCFC Appendix F, Rule 4.

(g) **Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing.**

**Plaintiffs' Response:** Plaintiff reserves the right to file Rule 56 Motions for Summary Judgment. A final determination regarding the appropriateness of a Rule 56 Motion cannot be made until Plaintiff conducts discovery and determines whether there exist disputed issues of material fact. In the event that Plaintiff concludes that some or all of the issues in this case may be resolved through Summary Judgment, Plaintiff will propose for the Court's consideration a briefing schedule within 30 days following the close of all discovery.

**Defendant's Response:** Defendant anticipates filing a dispositive motion on the question of whether the Court lacks jurisdiction because the jurisdictional deposit has not been met as described in paragraph a, above. Defendant proposes to file that motion on or before May 16, 2008. In addition, Defendant reserves the right to file a Rule 56 Motion for Summary Judgment. A final determination regarding the appropriateness of a Rule 56 Motion cannot be made until Defendant conducts discovery and determines whether there exist disputed issues of material fact. In the event that Defendant concludes that some or all of the issues in this case

may be resolved through Summary Judgment, Defendant will propose for the Court's consideration a briefing schedule within 30 days following the close of all discovery.

(h) **What are the relevant factual and legal issues?**

**Plaintiffs' Response:** The relevant issues as set forth in the Notice of Final Partnership Administrative Adjustment issued to Kislev Partners, L.P. for the taxable year ending December 31, 2002 are:

1. Does Kislev constitute a valid partnership?
2. Did Kislev have a basis of $142,016,024 in the € 1,377,500?
3. Did Kislev recognize a loss of $140,636,109 on the conversion of the euros into United States dollars.
4. Did the claimed loss result from a transaction entered into for profit?
5. Should the loss that results from an asset having basis in excess over fair market value, at the time of contribution to a partnership, be allocated to the contributing partner or partners?
6. Did the Kislev partnership and the transaction at issue have economic substance and business purpose?
7. Did the Kislev partnership and the transaction at issue constitute shams for federal tax purposes?
8. Does the step transaction doctrine apply to the transaction at issue?
9. Does Treasury Regulation section 1.701-2 apply to this case and, if so, is the regulation valid?

10. Does Code Section 465 of the Internal Revenue Code of 1986, as amended (the "Code") apply to limit the Kislev partners' use of the claimed loss?

11. Does Code Section 469 apply to prevent the partners from claiming the loss?

12. Does Code Section 482 apply to allocate the basis of the distressed assets to the contributing partner?

13. Does Treasury Regulation § 1.704-3(a)(8) and (a)(10) apply to allocate the losses attributable to the distressed assets to the contributing partner?

14. Should the Kislev partners be subject to penalties under Code Section 6662?

**Defendant's Response**: The principal focus in any suit brought under the TEFRA partnership provisions, 26. U.S.C. § 6221 *et. seq.*, is the determinations made by the IRS in the Final Partnership Administrative Adjustment (the "FPAA"). A copy of the FPAA is attached as Exhibit B to the Complaint in accordance with Appendix F, RCFC, ¶ 2(d)(1)(I).

In the government's view, Kislev Partners engaged in an abusive tax shelter transaction generically known as a DAD (distressed asset/debt) transaction. There are multiple steps to this complex transaction, originating with euros (the distressed assets) that had a face value of approximately $1,451,884 but an alleged tax basis of approximately $142,000,000. The euros were obtained by Kislev in redemption of its

interest in a foreign entity, and form the basis of the tax shelter through which Kislev's partners attempted to shelter taxable income. The FPAA disallowed the shelter and made adjustments to Kislev's partnership return.

The issues arising from the determination set forth in the FPAA are summarized as follows:

1. Whether the purported acquisition by Kislev Partners (hereinafter "the partnership) of the distressed assets, the subsequent disposition of the distressed assets (or any assets whose adjusted bases were determined by reference to the distressed assets), and/or the sale or exchange of interests in the partnership, had economic substance and were supported by a bona fide business purpose.
2. Whether the partnership and the alleged transactions engaged in by the partnership were shams.
3. Whether the form of the transactions undertaken by the partnership reflects the substance of the transactions for federal income tax purposes.
4. Whether the complicated steps undertaken by the partnership should be collapsed and taxed in accordance with their true substance under the step transaction doctrine as constituting a part of a unified integrated plan in which the partnership was utilized as a mere conduit serving no business purpose and

having no economic substance through which the distressed assets were in form allegedly passed to effectuate the desired inflated basis in the distressed assets and non-economic artificial losses.

5. Whether the partnership was formed and availed of, in connection with the transactions described in the FPAA, for the principal purpose to substantially reduce the present value of its partners' aggregate federal tax liabilities in a manner inconsistent with the intention of Subchapter K of the Internal Revenue Code such that the partnership and the transactions should be treated in the manner set forth in the FPAA pursuant to 26 CFR § 1.701-2.
6. Whether the partnership had any basis in the distressed assets.
7. Whether the partnership incurred any of the alleged losses during the taxable year.
8. Whether any of the alleged losses involving and/or related to the distressed assets acquired by the partnership resulted from a transaction entered into for profit under 26 U.S.C. § 165(c)(2).
9. In the alternative, if any portion of the alleged basis in the distressed assets is otherwise allowable, whether any portion of the alleged basis and related loss for the distressed assets that results from, or otherwise relates to, the excess of basis over fair market value at the time the distressed assets were allegedly

contributed to the partnership should be allocated to the contributing partner, pursuant to 26 U.S.C. § 482.

10. In the alternative, if any portion of the alleged loss relating to the distressed assets is otherwise allowable, with respect to any portion of the alleged loss recognized on the actual or deemed sale or exchange of the distressed assets that is attributable to the excess of basis over fair market value of the distressed assets at the time such assets were contributed to the partnership, whether the allocation of any such loss to the U.S. partners is unreasonable, and whether that portion of such loss should be allocated to the alleged partners that purportedly contributed the distressed assets, pursuant to 26 CFR §§ 1.704-3(a)(8) and 1.704-3(a)(10).
11. In the alternative, whether any of the partners were at-risk pursuant to 26 U.S.C. § 465 with regard to the activities conducted by the partnership during the taxable periods in issue.
12. In the alternative, whether the alleged losses relating to the distressed assets were passive activity losses subject to the limitations of 26 U.S.C. § 469.
13. Whether accuracy related penalties are properly applied pursuant to 26 U.S.C. § 6662.

In addition to these issues raised in the FPAA, an additional issue exists of whether the Court has jurisdiction to determine individual partners' defenses to the

penalties asserted in the FPAA. Defendant contends it does not pursuant to 26 C.F.R. § 301.6221-1.

(i) **What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

**Plaintiff's Response:** The Plaintiff is receptive to the possibility of settlement but cannot at this time assess the likelihood of settlement. As appropriate, the Plaintiff is open to discussing settlement and, if appropriate, to availing itself of the Court's ADR opportunities, assuming the Defendant is willing to have a decision maker participate.

**Defendant's Response**: The Defendant does not believe that utilizing alternative dispute resolution methods would be helpful at the present time in this case. The Tax Division has an excellent record of settling appropriate cases without invoking formal ADR techniques. If there is an opportunity to settle this case before commencing trial, Defendant's counsel will pursue that opportunity.

(j) **Do the parties anticipate proceeding to trial?**

**Plaintiff's Response:** Yes. The Plaintiff does not request expedited trial scheduling.

**Defendant's Response**: Yes, depending on the outcome of the Government's dispositive motion on the jurisdictional deposit issue. The Defendant does not request expedited trial scheduling.

(k) **Are there special issues regarding electronic case management needs?**

**Plaintiff's Response:** The Plaintiff is unaware of any special issues

regarding electronic case management needs.

**Defendant's Response**: The Defendant is unaware of any special issues regarding electronic case management needs.

(l) **Is there other information of which the court should be aware at this time?**

**Plaintiff's Response:** Plaintiff may request that the trial be held in New York, NY.

**Defendant's Response:** None at this time.

In specific response to the items identified in Subsection III (paragraph 5) regarding discovery, the parties report and recommend to the Court as follows:

**Joint Response:** Defendant proposes that it file its motion to dismiss on or before May 16, 2008. If defendant's motion is granted, the case will be dismissed. Accordingly, the parties propose that this portion of the Joint Preliminary Status Report be left open pending the Court's ruling on Defendant's Motion to Dismiss.

Respectfully submitted,

s/ N. Jerold Cohen
N. JEROLD COHEN
Sutherland, Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 853-8000
Fax: (202) 637-3593

Of Counsel:

Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2415
Tel: (202) 383-0140
Fax: (202) 637-3593

Amanda F. Wilson
Sutherland, Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Tel: (404) 853-8150
Fax: (404) 853-8806

Attorneys for Plaintiff

April 11, 2008

s/ David R. House
DAVID R. HOUSE
Attorney, Tax Division
Department of Justice
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Attorney for Defendant

Nathan J. Hochman
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section

s/ David Gustafson
Of Counsel

April 11, 2008