IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KISLEV PARTNERS, L.P.,<br>by and through Nesim Bahar,<br>A Partner Other Than the Tax Matters Partner<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 07-625<br><br>Judge Mary Ellen Coster Williams |

**FIRST AMENDED COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER INTERNAL REVENUE CODE SECTION 6226**

Plaintiff, Kislev Partners, L.P. ("Kislev"), by and through Nesim Bahar, a partner in Kislev, files this Complaint pursuant to Section 6226 of the Internal Revenue Code of 1986, as amended (the "Code") and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment issued to Kislev Partners, L.P. ("Kislev") with respect to Kislev's taxable year ending December 31, 2002, and as the basis for this case alleges as follows:

## I. THE PARTIES

1. Kislev is a limited partnership organized under the laws of the State of Delaware and is treated as a partnership for federal income tax purposes. Kislev's employer identification

number is 98-0174122. The principal place of business of Kislev at the time of filing this Petition is 150 East 58th Street, 33rd Floor, New York, NY 10155.

2. Mr. Bahar, through his wholly-owned limited liability company, Bahar-USA Developments LLC ("Bahar-USA"), is a partner within the meaning of Code section 6231(a)(2) and is a notice partner within the meaning of Code section 6231(a)(8). Bahar-USA is disregarded as an entity separate from Mr. Bahar for federal income tax purposes under 26 C.F.R. § 301.7701-3(b)(1)(ii).

3. Mr. Bahar's social security number is XXX-XX-2252 and his address is 165 Charles Street, Unit #25, New York, NY 10014.

4. The defendant is the United States of America, having taken the actions complained of through its agency, the Service.

## II. <u>JURISDICTION AND RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS APP. F RULES 1 AND 2</u>

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and Code section 6226(b)(1).

6. Kislev timely filed its Form 1065 U.S. Return of Partnership Income for the taxable year ending December 31, 2002 with the Service at Ogden, Utah. A copy of the return is attached as Exhibit A.

7. The Service issued a Final Partnership Administrative Adjustment on March 28, 2007 (the "FPAA"). The FPAA was issued by the Service's Chicago, Illinois office. A copy of the FPAA is attached as Exhibit B.

8. The FPAA was issued with respect to the Kislev taxable year ending December 31, 2002.

9. Pursuant to Code section 6226(e)(1), prior to the filing of this Petition, a deposit was made with the government in the amount of $9,500, representing the amount by which the tax liability of Mr. Bahar would be increased if the treatment of the "partnership items" on Mr. Bahar's tax return were made consistent with the treatment of "partnership items" on the partnership return, as adjusted by the FPAA. Attached as Exhibit C is a copy of the paper work and check associated with this deposit.

10. The deposit was made on August 2, 2007 and was sent to Revenue Agent James Batory in the Service's Chicago, Illinois office.

11. None of the Kislev partnership items have become non-partnership items by reasons of any events described in Code section 6231(b).

12. The period within which any tax attributable to the Kislev partnership items for the taxable year ending December 31, 2002 could be assessed against Mr. Bahar had not expired at the time the FPAA was issued.

13. The Tax Matters Partner of Kislev is Izak Senbahar. Mr. Senbahar's address is 150 E. 58th Street, New York, NY 10155.

14. Mr. Senbahar has not filed a complaint for readjustment of partnership items within the period specified in Code section 6226(a).

15. Kislev and Mr. Bahar have satisfied all conditions precedent to filing this suit.

## III. FACTUAL ALLEGATIONS

16. On October 31, 2002, Sen-Kis LLC ("Sen-Kis"), Izak Senbahar, Bahar-USA, and Games, L.L.C ("Games") acquired 100 percent of the interests in Kislev (the "Acquisition").

17. At the time of the Acquisition, the primary assets of Kislev consisted of a real estate contract pursuant to which Kislev agreed to acquire from unrelated third parties property located at 406-410 West Street (the "Real Estate Contract") and euros.

18. Mr. Bahar and his partners are real estate developers that have a long-standing record of successfully developing residential projects in New York City. They are consistently searching for real estate that can be developed for use in their business.

19. Mr. Bahar and his partners identified the 406-410 West Street property as property well-suited and desirable for their real estate development business. The property had an exceptional location, situated on the Hudson river. Mr. Bahar and his partners wished to acquire ownership of the property.

20. Following the Acquisition, Kislev closed on the Real Estate Contract and proceeded with the development of the 406-410 West Street property. The result was a 16-story residential tower designed by the renowned architect Richard Meier. As Mr. Bahar and his partners had anticipated, the development was successful and profitable.

21. Since the development of the 406-410 West Street property, Kislev continues to develop additional residential real estate projects in New York City.

22. The other primary asset of Kislev at the time of the Acquisition was euros, with respect to which Kislev had a built-in loss. This built-in loss was attributable to a decline in value of assets previously held by Kislev or its direct or indirect subsidiaries. These assets consisted of an investment in a foreign entity that operated duty-free stores and other airport businesses, businesses that experienced significant losses as a result of the establishment of the European Union.

23. On or after December 12, 2002, Kislev converted €1,377,500 into United States dollars.

24. Kislev claimed a basis in the €1,377,500 of $142,016,024, and recognized an ordinary loss of $140,636,109 on the conversion of the euros.

25. Kislev reflected the conversion on its 2002 Form 1065, Schedule L, Line 8, Statement 4 by showing a beginning balance in foreign currency of $142,033,583 and an ending balance of $0.

26. Code Section 704(d) provides that a partner's distributive share of partnership loss shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership. Any excess loss is deferred until the partner has sufficient basis in its partnership interest to claim the loss. As of the close of the 2002 taxable year, the Kislev partners' distributive shares of the loss from the conversion of the euros was limited by Code Section 704(d), as the partners did not have sufficient bases in their Kislev interests to report all of the loss. Consequently, on its 2002 Form 1065, Kislev reported a loss of $6,551,884 on Schedule K, line 7 and reported a deferred loss of $134,084,225 in Statement 5 to Schedule L, Line 13. The partnership generated income in later years that increased the partners' bases in their partnership

interests and the partnership reported a portion of the 2002 deferred loss on Lines 7 or 11 of the Schedules K attached to each year's Form 1065. Thus the partnership claimed $41,654,091 of the 2002 loss on its 2003 Form 1065, $32,766,807 on its 2004 Form 1065, $8,124,889 on its 2005 Form 1065, and $30,065,207 on its 2006 Form 1065.

27. The partnership now believes that, although there was no effect on its partners' tax reporting, the manner in which it reported the loss was incorrect. It therefore seeks to correct this error by reporting the entire $140,636,109 of loss on Line 7 of the Schedule K attached to its 2002 Form 1065. The partnership will file amended returns for any succeeding tax years in which any portion of the 2002 loss was reported by the partnership.

28. This correction does not affect the manner in which the partners, including Mr. Bahar, reported their allocable share of the loss in 2002 and the succeeding years, since, regardless of whether the deferral of the loss was reflected at the partnership or the partner level, under Code Section 704(d) the partners were still entitled to claim their allocable shares of the loss as they had sufficient bases in their Kislev interests. Pursuant to this basis limitation, and irrespective of the partnership's correction, Mr. Bahar could only report $655,188 of his allocable share of the loss on his 2002 individual income tax return, Form 1040. This is the amount that Mr. Bahar reported in Statement 1 to Line 21 on his 2002 Form 1040.

29. In determining and claiming the loss, Kislev relied on the written legal opinion of a national law firm, as well as the advice of both a nationally recognized tax boutique law firm and its long-time tax advisor.

## IV. <u>THE SERVICE'S POSITION</u>

30. On March 28, 2007, the Service issued the FPAA making the adjustments which are at issue in this case. The primary adjustment made by the Service in the FPAA was to disallow the loss recognized by Kislev on the sale of its euros, although the Service raises several alternative arguments and positions. The FPAA also asserts a 40-percent, accuracy-related penalty against Kislev or, alternatively, a 20-percent, accuracy-related penalty.

31. This complaint challenges all of the adjustments made by the Service in the FPAA.

## V. <u>ASSIGNMENTS OF ERROR</u>

32. The FPAA, and each and every determination and alternative position in the FPAA, is in error. Specifically, the Service committed the following errors in the FPAA:

a. The Service erred in determining that Kislev's ordinary income (loss) should be increased by $3,911 for the tax year ending December 31, 2002.

b. The Service erred in determining that Kislev's portfolio income (loss) should be reduced by $2,646 for the tax year ending December 31, 2002.

c. The Service erred in determining that Kislev's other income (loss) should be increased by $6,551,884 for the tax year ending December 31, 2002.

d. The Service erred in determining that Kislev's capital accounts should be decreased by $135,680,434 for the tax year ending December 31, 2002.

e. The Service erred in determining that "[i]t has not been established that the formation of Kislev Partners, LP (hereinafter the 'partnership'), its purported acquisition of built-in-loss assets (and/or assets whose adjusted bases were determined, in whole or in part, with reference to the adjusted basis of such assets), and/or the sale or exchange of interests in the

partnership (or related partnerships) (hereinafter the 'Transactions'), were imbued with economic substance and supported by bona fide business purpose."

f. The Service erred in determining that "[i]t has not been established that the partnership was formed and availed of for the purpose of carrying on business by partner or for the sharing of profits and losses from such activity. The partnership and alleged transactions undertaken by the partnership and/or its purported partners were shams for federal tax purposes."

g. The Service erred in determining that "[i]t has not been established that the form of the Transactions reflects the true substance of the Transactions for federal income tax purposes."

h. The Service erred in determining that "[i]t has not been established that the Transactions involving the distressed assets should not be collapsed under the step transaction doctrine and taxed in accordance with their true substance as constituting part of a unified integrated plan in which the partnership was utilized as a mere conduit serving no business purpose and having no economic substance through which the distressed assets were in form allegedly passed to effectuate desired inflated basis in the distressed assets and non-economic artificial losses."

i. The Service erred in applying Treasury Regulation § 1.701-2 to this case. To the extent that the Service did not err in applying Treasury Regulation § 1.702-1 to this case, the regulation is invalid.

j. The Service erred in determining that "[i]t has not been established that the partnership had any basis in the distressed assets. In this regard, it has not been established that the distressed assets were in fact contributed or, if contributed, that the alleged contributing partner had any basis in such assets or that such assets had any value at the time they were

contributed and were property within the meaning of Section 723."

k. The Service erred in determining that "[i]t has not been established that the partnership incurred any claimed losses during the taxable year in issue or that it is otherwise entitled to any deduction under any provision of the Internal Revenue Code."

l. The Service erred in determining that "[i]t has not been established that any claimed losses involving and/or related to the built-in-loss assets acquired by of [sic] the partnership resulted from a transaction entered into for profit, and accordingly, no such losses are allowable under any provision of the Internal Revenue Code, including, but not limited to, Section 165(c)(2)."

m. The Service erred in its alterative determination that, if any portion of the claimed basis in the distressed assets were allowable, "any portion of the basis and related loss claimed for the distressed assets that results from, or otherwise relates to, the excess of basis over fair market value (FMV) of such assets at the time the same were allegedly contributed to the partnership, should be allocated to the contributing partner, under the authority of Section 482 of the Internal Revenue Code."

n. The Service erred in its alterative determination that, if any portion of the claimed basis in the distressed assets were allowable, "with regard to any portion of the loss recognized on the actual or deemed sale or exchange of the distressed assets that is attributable to the excess of basis over FMV of the distressed assets at the time such assets were contributed to the partnership, the allocation of any of such loss to the U.S. partners is unreasonable, and that portion of such loss should be allocated to the alleged partners that purportedly contributed the distressed assets, in accordance with the authority of Section 1.704-3(a)(8) and (10) of the

Income Tax Regulations. Accordingly, in the alternative, the claimed loss relating to the distressed assets should be allocated to the partners that contributed the distressed assets."

o. The Service erred in determining that "it has not been established that any of the alleged partners of the partnership were at-risk under Section 465 of the Internal Revenue Code with regard to the activities conducted by the partnership during the taxable period(s) in issue."

p. The Service erred in its determination that "it has not been established that claimed losses relating to the distressed assets were not passive activity losses subject to the limitations of Section 469 of the Internal Revenue Code."

q. The Service erred in determining that the FPAA adjustments of partnership items of Kislev "are attributable to a tax shelter within the meaning of Section 6662(d)(2)(C)(ii) of the Internal Revenue Code. The partnership and its purported partners/members had, as a significant purpose, the avoidance or evasion of federal income tax, lacked substantial authority for the positions taken, and did not have a reasonable belief that those positions were more likely than not the correct treatment of such items."

r. The Service erred in determining "that all of the underpayments of tax resulting from the adjustments of partnership items made herein are attributable to (1) a substantial understatement, (2) a gross valuation misstatement, and/or (3) negligence or disregard of rules or regulations."

s. The Service erred in determining "that the partnership and its partners did not have reasonable cause and good faith for any of the resulting underpayments, or that any other exceptions to the accuracy-related penalty apply."

t. The Service therefore erred in determining that the accuracy-related

penalty under Code Section 6662 applies to all alleged underpayments of tax attributable to adjustments of partnership items of Kislev.

u. Consequently, the Service erred in making each of the following determinations:

i. A 40% penalty should be imposed on the portion of any underpayment attributable to a gross valuation misstatement pursuant to Code sections 6662(a), 6662(b)(3), 6662(e), and 6662(h).

ii. A 20% penalty should be imposed on the portion of any underpayment attributable to negligence or disregard of rules and regulations pursuant to Code sections 6662(a), 6662(b)(1), and 6662(c).

iii. A 20% penalty should be imposed on any underpayment attributable to any substantial understatement of income tax pursuant to Code sections 6662(a), 6662(b)(2), and 6662(d).

iv. A 20% penalty should be imposed on any underpayment attributable to a substantial valuation misstatement pursuant to Code sections 6662(a), 6662(b)(3), and 6662(e).

*****

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the adjustments made by the Service in the FPAA are factually and/or legally incorrect and are invalid:

2. Determine that the penalties asserted by the Service in the FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

3. Determine that the deposit paid by Mr. Bahar should be refunded, together with interest thereon; and

4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated: May 14, 2008

Respectfully submitted,

s/ N. Jerold Cohen__________
N. Jerold Cohen
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Tel: (404) 853-8038
Fax: (404) 853-8806
Attorney for Plaintiff

OF COUNSEL:
Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2415
Tel: (202) 383-0140
Fax: (202) 637-3593

Amanda F. Wilson
Sutherland, Asbill & Brennan LLP

999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Tel: (404) 853-8150
Fax: (404) 853-8806