No. 07-625 T
(Judge Mary Ellen Coster Williams)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KISLEV PARTNERS, L.P., by and through NESIM BAHAR,
a Partner Other than the Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RCFC 12(b)(1) AND MEMORANDUM IN SUPPORT**

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
JOSEPH SYVERSON
STEVEN I. FRAHM
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366
(202) 514-9440 (Fax)

**TABLE OF CONTENTS**

**Page(s)**

Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to RCFC 12(b)(1) and Memorandum in Support . . . . . 1

Questions Presented . . . . . 2

Introduction . . . . . 3

Statement . . . . . 4

Argument . . . . . 8

I. THE COMPLAINT SHOULD BE DISMISSED WHERE PLAINTIFF HAS FAILED TO COMPLY WITH THE JURISDICTIONAL REQUIREMENT OF 26 U.S.C. § 6226(E), DEPOSITING $2,895,546 LESS THAN THE AMOUNT REQUIRED BY THE STATUTE . . . . . 10

A. Section 6226(e) requires that the deposit be the increased tax liability of the petitioning partner, computed by treating the partnership items on the partner's return for the years in which the partner used those partnership items consistently with the adjustments made by the FPAA . . . . . 12

B. Courts have interpreted language in other TEFRA provisions similar to the language of section 6226(e)(1) to encompass changes to all of a partner's tax years that result from an adjustment of a partnership item . . . . . 15

II. THE GROSS DISPARITY BETWEEN THE "DEPOSIT" AND THE TAX LIABILITY COMPUTED CONSISTENTLY WITH THE ADJUSTMENTS MADE BY THE FPAA IS INDICATIVE OF BAD FAITH . . . . . 17

III. A SHORTFALL IN THE JURISDICTIONAL DEPOSIT IS TIMELY CORRECTED IF PAYMENT IS MADE WITHIN 60 TO 90DAYS OF THE DETERMINATION OF THE SHORTFALL . . . . . 18

Conclusion . . . . . 19

Declaration of David C. Kusmirek:

| Exhibit | Description |
|---|---|
| 1. | Kislev Partners, L.P., Form 1065, Return of Partnership Income for Tax Year Ending December 31, 2002. |
| 2. | Notice of Final Partnership Administrative Adjustment (FPAA), dated March 28, 2007, to Izak Senbahar as the Tax Matter Partner of Kislev Partners, L.P. |
| 3. | Nesim Bahar, Form 1040, Individual Income Return For The Tax Year Ending December 31, 2002. |
| 4. | Nesim Bahar, Form 1040, Individual Income Return For The Tax Year Ending December 31, 2003. |
| 5. | Nesim Bahar, Form 1040, Individual Income Return For The Tax Year Ending December 31, 2004. |
| 6. | Nesim Bahar, Form 1040, Individual Income Return For The Tax Year Ending December 31, 2005. |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Barenholtz v. United States*, 784 F.2d 375 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . 14, 15

*Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500 (W.D. Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Crnkovich v. United States*, 202 F.3d 1325 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 10

*Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418 (U.S. Tax Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006) . . . . . . . . . . . 12-14, 17

*Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505 (20007) . . . . . . . . . . . . . 13-15

*J&J Fernandez v. United States*, 2007 WL 1703439 (Fed. Cl.) . . . . . . . . . . . . . . . . . . . 14

*Kligfeld Holdings v. Commissioner*, 128 T.C. 192 (2007) . . . . . . . . . . . . . . . . . . . . . . . 14

*Maartin Investerings Partnership v. United States*, 2000-1 USTC ¶50-241 (SDNY 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Olson v. United States*, 37 Fed. Cl. 727 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Span Haansa Management v. United States*, 91-USTC ¶50,213 (WD Wash. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Woody v. Commissioner*, 95 T.C. 193 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes**:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

§§ 6221-6233 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes(Continuation)**:

**Page(s)**

§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 15-17

Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402, 96 Stat. 324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**Miscellaneous:**

H.R. Conf. Rep. No. 97-760, 97th Cong., 2d Sess. (1982) . . . . . . . . . . . . . . . . . . . . 10, 11

Treasury Regulations (26 C.F.R.):

§ 301.6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 7701-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-625 T
(Judge Mary Ellen Coster Williams)

---

KISLEV PARTNERS, L.P., by and through NESIM BAHAR,
a Partner Other than the Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RCFC 12(b)(1) AND MEMORANDUM IN SUPPORT**

---

The United States moves to dismiss plaintiff's complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), on the grounds that plaintiff Nesim Bahar has failed to make the jurisdictional deposit required by 26 U.S.C. § 6226(e)(1).[1] The jurisdictional deposit should equal the increase in Mr. Bahar's tax liability which would result by treating the partnership items of Kislev Partners, L.P., consistently with the adjustments made by the Notice of Final Partnership Administrative Adjustment ("FPAA") that is at issue in this case.[2] The IRS has computed that amount to be $2,905,046, exclusive of penalties and interest. Mr. Bahar has

[1]Unless otherwise noted, all references to code sections shall refer to the Internal Revenue Code of 1986, Title 26 of the United States Code, as amended and in effect during the relevant period.

[2]Although this Memorandum refers to "partners," the "partnership," and various purported entities, defendant does not concede that, under the applicable law, there was a viable partnership or that the alleged entities existed.

deposited only $9,500. In support of its motion, the United States relies on the following memorandum, the Declaration of David C. Kusmirek ("Kusmirek Decl."), and the exhibits attached to this Declaration.

## QUESTIONS PRESENTED

I. Whether the complaint should be dismissed where plaintiff has failed to comply with the jurisdictional requirement of § 6226(e)(1), by depositing an amount that is $2,895,546 less than that required by the statute.

A. Whether § 6226(e)(1) requires the deposit to be the amount of the petitioning partner's increase in tax liability computed by treating the partnership items on the partner's return for the years in which the partner used those partnership items consistently with the adjustments made by the FPAA.

B. Whether courts have interpreted language in other TEFRA provisions similar to the language of § 6226(e)(1) to encompass changes to all of a partner's tax years that result from an adjustment of a partnership item.

II. Whether the gross disparity between the "deposit" and the tax liability computed consistently with the adjustments made by the FPAA is indicative of bad faith.

III. Whether a shortfall in the jurisdictional deposit is timely corrected if payment is made within 60 to 90 days of the determination of the shortfall.

## INTRODUCTION

Kislev Partners engaged in a tax shelter transaction known as a DAD (distressed asset/debt) transaction. There are multiple, complex steps to the Kislev's DAD transaction, originating with euros (the distressed assets) with a face value of approximately $1,400,000, but an alleged tax basis of approximately $142,000,000. Kislev obtained the euros when it redeemed its interest in a foreign entity. The artificially inflated basis of the euros is at the heart of the tax shelter through which Kislev's partners attempted to shelter taxable income. When the euros were exchanged for dollars, Kislev used its inflated basis to report an extremely large loss for tax purposes. The IRS disallowed the losses manufactured by the DAD shelter and made adjustments to Kislev's partnership return. The reasons for the disallowance are expressed in the FPAA, attached as Exhibit B to plaintiff's complaint.

A partner in Kislev is Bahar-USA developments, LLC, a limited liability company wholly owned by Mr. Bahar. (Compl. ¶ 2). Mr. Bahar is, therefore, an indirect partner of Kislev. § 6231(a)(10). As an indirect partner filing the petition, Mr. Bahar is required to satisfy the deposit requirement of § 6226(e)(1). 26 CFR § 301.6226(e)(1). In a TEFRA action, § 6226(e)(1) requires that the petitioning partner deposit the increased tax liability that would occur if the treatment of partnership items on the partner's returns for the years in which the partnership items were used were made consistent with the FPAA's adjustments.

The IRS computed the increase in Mr. Bahar's liability as a result of the adjustments made by the FPAA to be $2,905,046, exclusive of penalties and interest. Mr. Bahar, however, deposited only $9,500 as the "jurisdictional deposit" required by § 6226(e)(1). Mr. Bahar's deposit is so far short of the required deposit that there does not even appear to be an attempt to comply with the requirements of § 6226(e)(1). As a result, the complaint should be dismissed.

**STATEMENT**

Plaintiff filed his complaint with this Court on August 22, 2007. ("Compl."). In the complaint, plaintiff petitions for readjustment of the FPAA's adjustments to Kislev's partnership items for Kislev's taxable period ending December 31, 2002. (*Id.* ¶ 7.) Mr. Bahar brought the complaint pursuant to § 6226(b) as an alleged "notice partner" within the meaning of § 6231(a)(8). (*Id.* ¶ 4.) Mr. Bahar appears to be an indirect partner as a result of his sole ownership of Bahar-Development - USA, LLC, (Bahar-USA), a limited liability company which is, itself, a partner in Kislev. (Compl. ¶ 2). The complaint alleges that Bahar-USA is disregarded as an entity separate and apart from Mr. Bahar pursuant to 26 C.F.R. § 7701-3(b)(1)(ii). (Id.) Mr. Bahar is an indirect partner of Kislev pursuant to § 6231(a)(10). As such, Mr. Bahar is required to satisfy the jurisdictional requirement of § 6226(e)(1). 26 CFR § 301.6226(e)-1.

**Kislev's Reporting of Losses**.

Plaintiff alleges that Kislev recognized an ordinary loss of $140,636,109.00 during its taxable period ending December 31, 2002. (Comp. ¶ 25.) The alleged loss occurred when Kislev purportedly exchanged €1,377,500 of euros for dollars. (Compl. ¶ 23-24.) Kislev claimed a basis of $142,016,024.00 in the euros. (Compl. ¶ 23.) The Form 1065 for the period ending December 31, 2002 attempted to suspend a large portion of the loss. (Kusmerik Decl., Ex. 1.) It reports a loss of $6,553,149 on line 7 of Schedule K. (Ex. 1, p. 3.) On Statement 5, the Form 1065 describes a "DEFERRED LOSSS (sic) DUE TO BASIS LIMIT" in the amount of $134,084,225, and included that amount in its capital accounts. (Ex. 1, p. 7.) Similarly, the Schedule K-1 issued to Bahar-Developments, LLC, for the taxable period ending December 31,

2002, stated that Bahar-Developments had a "suspended section 988 loss due to basis limitation" in the amount of $14,043,611. [3] (Ex. 1, p 9.)

**The FPAA's Adjustments to Kislev's Reported Losses**.

On March 28, 2007, the Internal Revenue Service issued an FPAA, making adjustments to Kislev's partnership items for the taxable period ending December 31, 2002. (Kusmerik Decl., Ex. 2.) Among those adjustments were the following:

| Partnership Item | As Reported | As Adjusted |
|---|---|---|
| Other Income (Loss) | ($6,551,884.00) | $0.00 |
| Capital Accounts | $135,680,434.00 | $0.00 |

(*Id*., p. 6.) In addition, the Kislev 2002 FPAA expressly determined that all losses with respect to its "distressed assets" were disallowed, because, *inter alia*, it had "not been established that [Kislev] had any basis in the distressed assets." (*Id*., p. 8.) Therefore, the deferred losses described on Statement 5 of Kislev's Form 1065 for the period ending Decembeer 31, 2002, in the amount of $134,084,225, in addition to the losses of $6,551,884 stated as Other Income (Loss), were disallowed.

**Adjustments to Mr. Bahar's Tax Returns Resulting from the FPAA**.

Prior to filing the complaint in this case on August 22, 2007, Mr. Bahar filed personal federal income tax returns (Forms 1040) for 2002-2005 in which he reported his share of the partnership loss Kislev reported on its partnership return for 2002 (including the losses "suspended" by Kislev in 2002). Those claimed losses dramatically reduced Mr. Bahar's taxable

---

[3] While the entire loss must be disallowed for the reasons stated in the FPAA, even if the loss were proper, plaintiff's attempt to "suspend" the loss at the partnership level is erroneous.

income in those years. (Kusmirek Decl., Exhibits 3-6.)

Mr. Bahar's Form 1040 for the year 2002, was filed on or about October 21, 2003, and reported a loss of $729,272 on line 21 with the comment "See Statement 1." (Kusmirek Decl. ¶ 7, Ex. 3, p. 1.) Statement 1 describes part of that loss as "Loss on Section 988", in the amount of $655,188. (*Id*., p. 13.) The disallowance of the losses by the FPAA disallows the loss in the amount of $655,188 on Mr. Bahar's return. (Kusmirek Decl. ¶ 7.) Although this adjustment to Mr. Bahar's return for the year 2002 does not result in an increased liability for 2002, it does reduce a net operating loss carryforward to Mr. Bahar's Form 1040 for 2003 which, when coupled with an adjustment required by an attempt to deduct additional losses from Kislev's Form 1065 for the period ending December 31, 2002, results in an increase in Mr. Bahar's tax liability for 2003. (*Id*.)

For the year ending December 31, 2003, Mr. Bahar filed Form 1040 on or about October 19, 2004, in which he claimed a loss on line 21 in the amount of $4,737,147 with the comment "See Statement 2." (Kusmirek Decl. ¶8, Ex. 4, p. 1.) Statement 2 describes the loss as $4,165,409 from "loss on Section 988" and $571,738 from "Net operating loss carryover" (NOL). (*Id*., p. 16.) After reduction of the NOL from 2002 described in paragraph 6, above, and disallowance of the "loss on Section 988" pursuant to the FPAA, the increase in Mr. Bahar's tax liability for the taxable year 2003 resulting from the FPAA adjustments, is $1,320,212.00, exclusive of interest and penalties. (Kusmirek Decl. ¶ 8.)

Mr. Bahar's Form 1040, for the year 2004, was filed on or about October 21, 2005, and reported a loss of $1,031,846 on line 21 with the comment "See Statement 2." (Kusmirek Decl. ¶9, Ex. 5, p 1.) Statement 2 describes part of that loss as "Loss on Section 988", in the amount of $460,108. (*Id*. p 14.) In addition, Statement 2 describes the amount of $571,738 as a net

operating loss carryover (NOL). (*Ibid*.) The "Loss on Section 988" is the disallowed loss from the FPAA. (Kusmirek Decl. ¶ 9.) The NOL is unavailable for use in 2004, because of the disallowance of the losses for 2002 and 2003, described above. (*Id*.) Although these adjustments to Mr. Bahar's return for the year 2004 do not result in an increased liability for 2004, it does reduce a net operating loss carryforward to Mr. Bahar's Form 1040 for 2005 which, when coupled with an adjustment required by an attempt to deduct additional losses from Kislev's Form 1065 for the period ending December 31, 2002, results in an increase in Mr. Bahar's tax liability for 2005. (*Id*.)

Mr. Bahar's Form 1040, for the year 2005, was filed on or about October 23, 2006, and reported a loss of $598,107 on line 17, from Schedule E. (Kusmirek Decl. ¶ 10, Ex. 5, p. 1.) Schedule E, in turn states "See Statement 2." (*Id*., p. 7.) On Statement 2, there is an item described as "Section 988 loss" in the amount of $3,276,681. (*Id*., p. 9.) Although the partnership is not named under the column specifying the name of the partnership, the Employer ID No., 98-0174122, is the same as Kislev Partners. (*Ibid*.) The "Section 988 loss" reported as part of Schedule E was disallowed by the FPAA. (Kusmirek Decl. ¶ 10.) As a result of the disallowance, there is net income from Schedule E. (*Id*.) In addition, there is an NOL reported on line 21 of the 2005 Form 1040 in the amount of $1,607,404. (Kusmirek Decl., Ex. 6, p. 1.) Due to the adjustments made to prior returns as a result of the FPAA adjustments, described above, there is a reduction in the amount of the NOL carried forward to 2005. (Kusmirek Decl. ¶ 10.) The increase in Mr. Bahar's tax liability for the taxable year 2005, resulting from the adjustments made by the FPAA is $1,584,834.00, exclusive of interest and penalties. (*Id*.)

By treating the partnership items consistently with the adjustments made in the 2002 FPAA for each return in which Mr. Bahar used them, Mr. Bahar's tax liability is increased by the

amount of $2,905,046, exclusive of penalties and interest. (Kusmirek Decl. ¶¶ 5-10).

**Deposit made prior to filing the complaint**.

Prior to filing of this suit, Mr. Bahar made a deposit of $9,500.00 with the Internal Revenue Service ("IRS"). (Compl. ¶ 9.) Plaintiff alleged that this deposit satisfied the requirements of § 6226(e)(1), because it "represent[ed] the amount by which the tax liability of Mr. Bahar would be increased if the treatment of the 'partnership items' on Mr. Bahar's tax return were made consistent with the treatment of 'partnership items' on the partnership return, as adjusted by the FPAA." (*Id.*) Similarly, in a letter dated August 2, 2007, to the IRS, Mr. Bahar's attorney stated that Mr. Bahar's $9,500.00 deposit represented "the total amount of tax, in addition to any tax previously paid, as well as our calculation of associated interest, that would be due from Mr. Bahar by taking into account all of the adjustments made by the Notice of Final Partnership Administrative Adjustment issued to Kislev Partners, L.P. for the taxable year ended December 31, 2002," and further stated that the deposit was "intended to satisfy the deposit requirement of Code § 6226(e)(1)." (*Id.* ¶ 9, Compl. Ex. C at 1.)

## ARGUMENT

Plaintiff's complaint should be dismissed, because Mr. Bahar has failed to make a jurisdictional deposit of $2,905,046, the amount of the increase in his individual income tax liability resulting from application of the adjustments of partnership items in the Kislev 2002 FPAA, as required by § 6226(e)(1). Instead, plaintiff has made a deposit of $9,500.00, which represents only a small fraction of the increase resulting from application of the Kislev 2002 FPAA to Mr. Bahar's individual tax liability.

Section 6226(e)(1) requires that the petitioning partner deposit with the Service the

amount by which the partner's tax liability would be increased if the adjustments determined by the FPAA were applied to the partner. This increase in the partner's tax liability is determined by treating partnership items reported on each return in which the partner reported those items consistently with the adjustments made by the FPAA. This is consistent with TEFRA. Courts, in actions under TEFRA, have held that an FPAA is timely even where the statute of limitations is closed with respect to the partner for the year for which the FPAA issued. The rationale is that, where the partner took advantage of the partnership items adjusted by the FPAA in later years for which the statute is open, the Service may still assess a tax liability against the partner for items adjusted by the FPAA. As a result, the TEFRA action should go forward. If a partner's "tax liability" were limited to that for the year in which the FPAA issued, then the bar of the statute of limitations for that year would render the FPAA untimely as to all years in which those partnership items were reported on the partner's returns. That position has been rejected by the courts. Accordingly, the FPAA's adjustments are used to determine the partner's tax liability on each return in which the partner took advantage of the partnership items adjusted by the FPAA, prior to filing the complaint.

In this case, Mr. Bahar's tax liability would be increased by $2,905,046 as a result of the FPAA's disallowance of approximately $140,000,000 in claimed losses on the partnership return filed for 2002. Mr. Bahar deposited $9,500. The deposited amount fails to comply with § 6226(e)(1). Prior to filing his complaint in August of 2007, Mr. Bahar filed returns for 2002 through 2005 that claimed tax benefits from the losses the FPAA disallowed. Mr. Bahar, despite knowing of the change the FPAA adjustments made to the claimed tax benefits, failed to account for them in his deposit. Mr. Bahar's failure to take those adjustments into account - and the minimal deposit made - is indicative of a lack of good faith in determining the jurisdictional

amount.

## I.
## THE COMPLAINT SHOULD BE DISMISSED WHERE PLAINTIFF HAS FAILED TO COMPLY WITH THE JURISDICTIONAL REQUIREMENT OF 26 U.S.C. § 6226(e), DEPOSITING $2,895,546 LESS THAN THE AMOUNT REQUIRED BY THE STATUTE.

In 1982, Congress enacted coordinated procedures for determining the proper treatment of "partnership items" at the partnership level in a single, unified audit and judicial proceeding, as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402(a), 96 Stat. 324, 648-671, codified in §§ 6221-6233. *See* H.R. Conf. Rep. No. 97-760, 97th Cong., 2d Sess. 599-600 (1982); *Crnkovich v. United States*, 202 F.3d 1325, 1329 (Fed. Cir. 2000) (per curiam). In § 6221, Congress specified that the tax treatment of "any partnership item shall be determined at the partnership level." In this case, the FPAA the IRS issued for the period ending December 31, 2002, disallowed all losses the partnership claimed from the alleged sale of the euros - including the improperly "suspended" loss. As a result, any partner seeking to file a readjustment petition in a district court or the Court of Federal Claims must comply with the provisions of § 6226(e)(1) by depositing the amount by which the partner's tax liability would be increased by the disallowance of the loss.

Section 6226(e)(1), provides that the required jurisdictional deposit is equal to the increased taxes that would result if the FPAA determinations are applied to the partner:

> (1) IN GENERAL.— A readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment . . . .

The legislative history of TEFRA makes clear that satisfying the "deposit requirement" is "[a] condition to filing a petition in either the appropriate district court or the claims court." *See* H.R. Conf. Rep. No. 97-760 at 603-04.

In this case, the FPAA made adjustments to Kislev's partnership items on its Form 1065 for the period ending December 31, 2002. Mr Bahar used the losses disallowed by the 2002 FPAA in computing his personal tax liability for each return filed for 2002, 2003, 2004, and 2005. Although the adjustments made by the FPAA resulted in no additional tax liability for 2002 on Mr. Bahar's return for that year, when the adjustments are consistently applied to each return in which Mr. Bahar took advantage of the 2002 partnership losses, his liability is increased by $2,905,046.

Mr. Bahar, whose increase in tax liability computed consistently with the FPAA is $2,905,046, nevertheless seeks to invoke the jurisdiction of this Court by depositing only $9,500 and without regard to the effect of the FPAA adjustments on his tax liability in years in which he actually took advantage of the disallowed losses. If Mr. Bahar wished to avoid the deposit requirement, Congress has provided for Tax Court jurisdiction without the need to make a deposit.[4]

[4]Where partners do not wish to make such a deposit, a petition may be filed in the United States Tax Court. 26 U.S.C. § 6226(a)(1). The jurisdictional deposit is only required if the petition is filed in district court or the Court of Federal Claims. § 6226(e).

**A. Section 6226(e) requires that the deposit be the increased tax liability of the petitioning partner, computed by treating the partnership items on the partner's return for the years in which the partner used those partnership items consistently with the adjustments made by the FPAA.**

The § 6226(e)(1) deposit requirement has been applied by courts to require the deposit of the amount by which the petitioning partner's tax liability would increase as a result of the adjustments in the FPAA, without regard to which of the petitioning partner's tax years the increase in liability occurs. *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006). In *Grapevine Imports*, the IRS issued an FPAA that adjusted partnership items for the 1999 partnership year. The adjustments made by the FPAA affected the individual partner's 1999 and 2000 years, due to the use of net operating loss carryforwards -- much like this case. In *Grapevine Imports*, the partner made a deposit for increase in tax liability resulting from this adjustment for both 1999 and 2000, and the Court stated that this deposit was made "in accordance with Section 6226(e)."

This is consistent with the Congressional scheme under TEFRA. Under TEFRA, all partnership adjustments are to be determined at the partnership level – not the individual partner level. § 6221. Partnership level adjustments for one partnership taxable period may, as in this case, affect a partner's individual tax liability for other years. To invoke the jurisdiction of a district court or the Court of Federal Claims, the petitioning partner must deposit the amount of the tax liability computed consistently with the adjustments made by the FPAA.

Where the tax liability of the partner is affected by the FPAA adjustments in years beyond the year of the FPAA, that liability must be computed for all returns due before the

complaint is filed.[5] The effect of the FPAA's adjustments are not limited to the year for which the FPAA was issued. If the tax liability of the partner were to be determined solely with reference to the year in which the FPAA issued, where the statute of limitations bars an assessment against a partner for the year for which the FPAA issued, the FPAA would be untimely – and assessments barred – for all years in which the partnership items were reported on a partner's return. However, several cases have held that an FPAA may issue for a year on which the statute of limitations is closed, when the affect of the FPAA adjustments results in a tax liability for a partner in an open year.

In *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006)(hereinafter "*Grapevine I*"), and *Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505 (20007)(hereinafter "*Grapevine II*"), the Internal Revenue Service issued an FPAA for the partnership's taxable period ending December 31, 1999. The adjustments made by the FPAA affected a partner's individual liability for his 1999 and 2000 taxable years. The partner deposited the amount of his increased tax liability for both 1999 and 2000 resulting from the adjustments made by the 1999 FPAA, then filed a motion for summary judgment, contending that the statute of limitations had expired with respect to his 1999 and 2000 taxable year with the result that the 1999 FPAA was untimely. The defendant cross moved, asserting that the limitations period for both 1999 and 2000 remained open, although for different grounds as to each year.

In *Grapevine I*, this Court held that the statute of limitations with respect to the year 2000

---

[5]For taxable years for which returns are due after the complaint, there is no return upon which to calculate the affect of the FPAA adjustments as of the date of the complaint, so § 6226(e)(1) does not apply to those years.

was open as to the partner's individual taxable year, denied the partner's motion for summary judgment, and granted the defendant's motion for partial summary judgment as to that year. *Grapevine I*, 71 Fed. Cl. 324, 344. The Court held open its decision as to the partner's 1999 taxable year – which was the year of the partnership for which the FPAA issued – pending further development of the facts.

In *Grapevine II*, the Court of Federal Claims held that the partner's 1999 year was closed, so the FPAA was untimely as to that year. The Court went on to hold that even though the statute of limitations barred an assessment against the partner for 1999 - the year in which the losses were claimed by the partnership and disallowed by the FPAA – the IRS was not barred from adjusting the partner's liability for 2000 due to the affect the 1999 disallowed losses had on that year. *Grapevine II*, 77 Fed. Cl. 505, 513. The rationale for the *Grapevine II* Court's decision was that, while the statute of limitations barred assessments, it did not bar calculations. *Grapevine II*, 505 Fed. Cl. 512 (citing *Barenholtz v. United States*, 784 F.2d 375 (Fed. Cir. 1986)).[6] Therefore, the adjustments made by the FPAA for 1999 were to be used to calculate the partner's liability for the later year, even though his 1999 year was barred by the statute of limitations.

Similarly, § 6226(e)(1) requires the partner to calculate and deposit the amount of his tax liability consistently with the adjustments made by the FPAA -- even when those adjustments affect later years due to loss carryforwards, just as in *Grapevine* and the present case. If the "tax liability of the partner" were calculated solely with reference to the year for which the FPAA issued, there would be no reason for continuing with a case in which the statute of limitations

[6]*See also J&J Fernandez v. United States*, 2007 WL 1703439 (Fed. Cl.), *Kligfeld Holdings v. Commissioner*, 128 T.C. 192 (2007).

bars an assessment for the year in which the FPAA issued. This is contrary to the holdings of *Barenholtz*, *supra*, and *Grapevine II*, supra. Therefore, the computation of a partner's liability -- and his jurisdictional deposit -- cannot be determined solely by reference to the year in which the FPAA was issued, but, rather, must be calculated for the periods the partner claimed the benefit of the partnership items being adjusted, up to the date the complaint was filed.

**B. Courts have interpreted language in other TEFRA provisions similar to the language of section 6226(e)(1) to encompass changes to all of a partner's tax years that result from an adjustment of a partnership item**.

The scope of the deposit requirement under § 6226(e)(1) to include the years in which benefits were claimed is confirmed by cases that have interpreted similar language in other TEFRA provisions. Specifically, multiple courts, including this Court, have interpreted the definition of "tax liability" in § 6231(a)(6) to encompass adjustments to *all* of a partner's affected tax years as a result of the treatment of a partnership item under the TEFRA provisions. Section 6231(a)(6), employing language similar to that of§ 6226(e)(1), defines "computational adjustment" as:

> [T]he *change in the tax liability* of a partner which properly reflects the treatment under this subchapter of a partnership item.

(Emphasis added.) Once a final partnership-level adjustment has been made to a partnership item, the Service may make a computational adjustment to a partner's tax liability without first issuing a notice of deficiency, where the determination of the deficiency involved is "merely computational" and not one requiring further factual investigation. *Olson v. United States*, 37 Fed. Cl. 727, 732 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999) (quoting *Woody v. Commissioner*, 95 T.C. 193, 202 (1990)). Such computational adjustments may, in turn, affect the amount of other items on an individual partner's return, and such items are called "affected items."

§ 6231(a)(5). If the determination of an affected item does not require partner-level factual determination, the change in the partner's *tax liability* attributable to the change in the affected item may also be assessed by the IRS by way of computational adjustment without first issuing a notice of deficiency, regardless of the year in which the tax liability occurs. § 6230(a)(2)(A)(i); *Olson*, 37 Fed. Cl. at 723.

In *Olson*, this Court interpreted the TEFRA provisions to permit a computational adjustment to a partner's tax liability for tax years other than the partnership's taxable year that was the subject of partnership level administrative and judicial proceedings. In *Olson*, the proceedings at the partnership level resulted in a disallowance of a credit that was claimed by the partnership in 1983. *Olson*, 37 Fed. Cl. at 734. The partner claimed his distributive share of this credit on his joint individual return filed for 1983, and carried the credit back to 1980, 1981, and 1982, and forward to 1984. *Ibid.* The IRS assessed the partner for the carryforward and carryback years by way of a computational adjustment, which the partner challenged in a partner-level proceeding, contending that the assessments for these years could not be made without issuing a notice of deficiency. *Ibid.* The Court rejected the partner's challenge, holding that the IRS could assess the partner for the carryover and carryback years by way of computational adjustment. *Id.* at 735. Other courts have reached the same result under similar circumstances. *See Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418, at *3 (U.S. Tax Ct. 1996) (holding that net operating loss carryovers to later years are affected items that can be assessed by computational adjustment); *Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500, 512 (W.D. Tex. 1994) (holding that "[d]etermining the amount of a loss carryover or carryback as a result of a settlement agreement relating to partnership items requires only a computational adjustment").

Therefore, the "tax liability" of the partner includes the tax liability calculated based upon the adjustments made by the FPAA to partnership level items for all years in which those partnership items appear on the partner's return, whether it is for purposes of a computational adjustment made pursuant to § 6231(a)(6), or for purposes of calculating the jurisdictional deposit of § 6226(e). *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006); *Olson v. United States*, 37 Fed. Cl. 727, 735 (1997).

## II.
## THE GROSS DISPARITY BETWEEN THE "DEPOSIT" AND THE TAX LIABILITY COMPUTED CONSISTENTLY WITH THE ADJUSTMENTS MADE BY THE FPAA IS INDICATIVE OF BAD FAITH.

Section 6226(e)(1) permits a taxpayer to amend his deposit to cure a shortfall if the Court determines that the insufficient deposit was nevertheless a good faith effort to satisfy the jurisdictional requirement. Mr. Bahar's deposit is woefully deficient and does not meet the good faith standard.

Mr. Bahar made a token deposit of only $9,500.00. Mr. Bahar knew that the FPAA disallowed more than $140,000,000 of partnership losses. He also knew that he had claimed his substantial share of those losses on his personal returns for the years 2002-2005. Nevertheless, he made no inquiry with the revenue agent at the Internal Revenue Service regarding the additional tax liability to him that flowed from the disallowed losses. Instead, he made a deposit that is a mere .3% of the required amount – $2,905,046. Mr. Bahar's deposit therefore falls far short of a good faith estimate of the amount of the tax liability computed by treating the partnership items consistently with the FPAA.

Mr. Bahar claims that only the computational adjustment to his 2002 income tax liability is to be taken into account in determining his deposit. But, as we have shown, the deposit

requirement covers the years in which a partner has claimed a tax benefit from the partnership item adjusted by an FPAA, and is not limited to the partner's tax year within the partnership's year adjusted by the FPAA. Since a partner may benefit only in years other than the partnership year as to which the FPAA made adjustments to partnership items, Mr. Bahar's construction of the term "tax liability" could result in no jurisdictional deposit at all – a result plainly contrary to Congress' intent. The § 6226(e) jurisdictional deposit was clearly designed to link the deposit with the effects of an FPAA on an individual partner – a link Mr. Bahar's construction severs.

## III.
## A SHORTFALL IN THE JURISDICTIONAL DEPOSIT IS TIMELY CORRECTED IF PAYMENT IS MADE WITHIN 60 TO 90 DAYS OF THE DETERMINATION OF THE SHORTFALL

The Court has requested that the Government address the issue of when a correction to the deposited amount would be timely in the event the Court finds the deposit, though insufficient, was made in good faith. In *Maartin Investerings Partnership v. United States*, 2000-1 USTC ¶50-241 (SDNY 2000), the court found that the partner had computed the jurisdictional deposit in good faith even though there was a shortfall. In that instance, the Southern District of New York permitted the partner to remedy the shortfall in 60 days. In the case of *Span Hansa Management v. United States*, 91-USTC ¶ 50,213 (WD Wash. 1991), the parties agreed that the jurisdictional deposit had been made in good faith even though there was a shortfall. In that case, the court permitted the partner to remedy the shortfall in 90 days. Defendant is not aware of any other reported cases addressing the time within which a petitioner may correct a shortfall in the jurisdictional deposit. Defendant also is unaware of any guidance regarding such a period in the legislative history of § 6226(e).

## CONCLUSION

For the reasons stated above, the plaintiff's $9,500 deposit fails to satisfy the jurisdictional deposit requirement of § 6226(e)(1), and the complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

May 15, 2008

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366 - telephone
(202) 514-9440 - facsimile
David.R.House@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
JOSEPH B. SYVERSON
Trial Attorney

s/ Steven I. Frahm
Of Counsel

May 15, 2008

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing document has, this 16th day of May, 2008, been made on the plaintiff by electronic filing. In addition, the Tax Matters Partner has been served by mailing a copy thereof to the following address:

Izak Senbahar
150 E. 58th Street
New York, NY 10155

s/Carl D. Brewer
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D. C. 20044
(202) 307-6440