**Internal Revenue Service**
230 S. Dearborn MS 4031 CHI Room 2043
Attn: Brenda Williams
Chicago, IL 60604

**Department of the Treasury**

Refer To: Brenda Williams

Name of Partnership: Kislev Partners L.P.

Partnership Identifying Number: 98-0174122

Tax Year Ended: 12/31/2002

Date: MAR 28 2007

Date FPAA Mailed to the Tax Matters Partner: MAR 28 2007

Izak Senbahar
as the Tax Matters Partner
Kislev Partners, L.P.
c/o Alexico Mgmt
150 East 58th Street
New York, NY 10155

Person to Contact: Brenda Williams
Employee Number: 36-08840

Contact Telephone Number: 312-566-2449
(not a toll free number)

Contact Hours: 8:00 AM to 4:30 PM

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and the tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

GOVERNMENT
EXHIBIT
2

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court can't consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court of the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership

| Form **870-LT** (Rev. 6-2006) | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items** | IN REPLY REFER TO:<br>Brenda Williams |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| Izak Senbahar<br>as the Tax Matters Partner<br>Kislev Partners, L.P.<br>c/o Alexico Mgmt.<br>150 East 58th Street<br>New York, NY 10155 | Kislev Partners, L.P.<br>Taxpayer Identifying Number:<br>98-0174122 | December 31,2002 |
| Taxpayer Identifying Number: 98-0174122 | Name of Tax Matters Partner:<br>Izak Senbahar | |

## Part I – Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

## Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached schedule of adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

| | | |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| | | |
|---|---|---|
| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
| | Office | Title |

## INSTRUCTIONS FOR SIGNING FORM 870-LT

1. Sign Part I (Offer of Settlement of Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts) of Form 870-LT to settle the partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts, if any, as shown on the attached Schedule of Adjustments.

2. Sign Part II (Offer of Settlement of Affected Items and Waiver of Restrictions on Assessment) of Form 870-LT to settle the items that require partner level determinations (affected items, including penalties, additions to tax, and additional amounts, if any). These items are also shown on the attached Schedule of Adjustments.

   If you sign Part I, but don't sign Part II, we will mail you one of the following:
   - An affected item report, including penalties, additions to tax, and additional amounts, if any, showing the adjustments to your return. You can agree to the affected items at that time or request further Appeals consideration. The report will explain how to do this.
   - A notice of deficiency for the affected items other than penalties, additions to tax, and additional amounts. The notice will tell you how to file a petition with the United States Tax Court to dispute the deficiency attributable to the affected items other than penalties, additions to tax, and additional amounts. Penalties, additions to tax, and additional amounts, if any, will be assessed. You must then pay the tax and penalties before you may file a claim for refund to raise any partner level defenses per IRC section 6230(c)(1).

   The execution and filing of this offer will expedite the adjustment of tax liability.

3. Your agreement to the corrected partnership items in Part I of Form 870-LT will remain in effect, whether or not you sign Part II of this form.

4. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-LT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

5. If the taxpayer is a corporation, the agreement must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-LT.

6. Your attorney or agent may sign either part of the form for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

7. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

8. For a partner who is a member of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). However, if the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block.

   For a partner who is the common parent corporation of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before, on or after June 28, 2002, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. However, if the agreement is for partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v).

NOTE: The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury — Internal Revenue Service

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP<br>Kislev Partners, L.P.<br><br>TAXPAYER IDENTIFYING NUMBER 98-0174122 | TAX YEAR(S) ENDED<br>12/31/2002 | | |
|---|---|---|---|
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| Ordinary income (loss) from trade or business | 3,911.00 | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 3,911.00 | | |
| OTHER ADJUSTMENTS | | | |
| A. Portfolio income (loss) interest | | | |
| (1) ADJUSTMENT | (2,646.00) | | |
| (2) AS REPORTED | 2,646.00 | | |
| (3) CORRECTED | 0.00 | | |
| B. Other income (loss) | | | |
| (1) ADJUSTMENT | 6,551,884 | | |
| (2) AS REPORTED | (6,551,884) | | |
| (3) CORRECTED | 0.00 | | |

REMARKS

## Form 870-LT, Other Adjustments (Continued)

Page 2 of 2

| NAME OF PARTNERSHIP<br>Kislev Partners, L.P.<br><br>TAXPAYER IDENTIFYING NUMBER 98-0174122 | TAX YEAR(S) ENDED<br>12/31/2002 | | |
|---|---|---|---|
| C. Investment income included in portfolio Income | | | |
| (1) ADJUSTMENT | (2,646.00) | | |
| (2) AS REPORTED | 2,646.00 | | |
| (3) CORRECTED | 0.00 | | |
| D. Basis | | | |
| (1) ADJUSTMENT | * | | |
| (2) AS REPORTED | * | | |
| (3) CORRECTED | -0- | | |
| E. Capital Accounts | | | |
| (1) ADJUSTMENT | (135,680,434) | | |
| (2) AS REPORTED | 135,680,434 | | |
| (3) CORRECTED | 0.00 | | |
| F. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| G. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

Exhibit A - Explanation of Items
**KISLEV PARTNERS, L.P.**
Final Partnership Administrative Adjustment Letter
Tax Year Ended - December 31, 2002 TIN: 98-0174122

1. It has not been established that the formation of Kislev Partners, LP (hereinafter the "partnership"), its purported acquisition of built-in-loss assets, the subsequent actual or deemed sale or exchange of such built-in loss assets (and/or assets whose adjusted bases were determined, in whole or in part, with reference to the adjusted basis of such assets), and/or the sale or exchange of interests in the partnership (or related partnerships) (hereinafter the "Transactions"), were imbued with economic substance and supported by bona fide business purpose. Accordingly, all reported losses of the partnership arising from the Transactions involving and/or related to the built-in-loss assets (also referred to herein as the "distressed assets") are disallowed

2. It has not been established that the partnership was formed and availed of for the purpose of carrying on business by partner or for the sharing of profits and losses from such activity. The partnership and alleged transactions undertaken by the partnership and/or its purported partners were shams for federal tax purposes. All claimed losses are accordingly disallowed, and the partnership is disregarded for federal income tax purposes.

3. It has not been established that the form of the Transactions reflects the true substance of the Transactions for federal income tax purposes. The contributions of distressed assets to the partnership are treated in substance as never having been contributed to it; such assets are instead treated as having been sold to the partnership by the purported partner contributing the same for an amount equal to the amount which such contributing partner allegedly received later upon the alleged sale or exchange of its interest in the partnership (or another partnership to which such interest was transferred). In the alternative, such assets are treated in substance as having been purchased from the purported contributing partner by the partner allegedly purchasing such contributing partner's interest in the partnership (or another partnership to which such interest was transferred) in an amount equal to the amount paid for the alleged purchase of such partnership interest, followed by the contribution of the distressed assets by the purchasing partner to the partnership. Giving effect to the substance, not the form, of the Transactions, all claimed losses are disallowed.

4. It has not been established that the Transactions involving the distressed assets should not be collapsed under the step transaction doctrine and taxed in accordance with their true substance as constituting part of a unified integrated plan in which the partnership

was utilized as a mere conduit serving no business purpose and having no economic substance through which the distressed assets were in form allegedly passed to effectuate desired inflated basis in the distressed assets and non-economic artificial losses. Giving effect to the application of the step transaction doctrine, all claimed losses are disallowed.

5. It has not been established that the partnership was formed and availed of, in connection with the Transactions, other than for the principal purpose to substantially reduce the present value of its partners' aggregate federal tax liabilities in a manner inconsistent with the intent of Subchapter K of the Internal Revenue Code. Pursuant to Section 1.701-2 of the Income Tax Regulations, it is determined that:

    a. The partnership is disregarded and all actions and activity allegedly undertaken and/or conducted by the partnership are treated as having been undertaken and/or conducted by its purported partners in their individual capacities, not as partners;

    b. All purported contributions of distressed assets to the partnership are treated as never having been contributed to it; such assets are instead treated as having been sold to the partnership by the purported partner contributing the same for an amount equal to the amount which such contributing partner allegedly received later upon the alleged sale or exchange of its interest in the partnership interest (or another partnership to which such interest was transferred). In the alternative, such assets are treated as having been purchased from the purported contributing partner by the partner allegedly purchasing such contributing partner's interest in the partnership (or another partnership to which such interest was transferred) in an amount equal to the amount paid for the alleged purchase of such partnership interest, followed by the contribution of the distressed assets by the purchasing partner to the partnership;

    c. All alleged contributions to the partnership giving rise to claimed basis by the partnership in such assets are treated as not having been made to the partnership; the alleged transfers giving rise to said claimed contributions are instead treated as involving transfers by and among the alleged partners in their individual capacities, not as partners;

Exhibit A - Explanation of Items
**KISLEV PARTNERS, L.P.**
Final Partnership Administrative Adjustment Letter
Tax Year Ended - December 31, 2002 TIN: 98-0174122

d. All claimed losses of the partnership arising from the Transactions are disallowed as not reflecting true economic loss of the partnership and/or any of the purported partners to whom such loss was allocated.

Accordingly, all claimed losses are disallowed in full.

6. It has not been established that the partnership had any basis in the distressed assets. In this regard, it has not been established that the distressed assets were in fact contributed or, if contributed, that the alleged contributing partner had any basis in such assets or that such assets had any value at the time they were contributed and were property within the meaning of Section 723. It is therefore determined that such bases are zero, and any claimed losses with respect to such assets are disallowed.

7. It is has not been established that the partnership incurred any claimed losses during the taxable year in issue or that it is otherwise entitled to any deduction under any provision of the Internal Revenue Code. Accordingly, all reported losses involving and/or related to the built-in-loss assets are disallowed.

8. It is has not been established that any claimed losses involving and/or related to the built-in-loss assets acquired by of the partnership resulted from a transaction entered into for profit, and, accordingly, no such losses are allowable under any provision of the Internal Revenue Code, including, but not limited to, Section 165(c)(2).

9. Alternatively, if any portion of the claimed basis in the distressed assets is otherwise allowable, it is determined that any portion of the basis and related loss claimed for the distressed assets that results from, or otherwise relates to, the excess of basis over fair market value (FMV) of such assets at the time the same were allegedly contributed to the partnership, should be allocated to the contributing partner, under the authority of Section 482 of the Internal Revenue Code.

10. Alternatively, if any portion of any claimed loss relating to the distressed assets is otherwise allowable, it is determined that with regard to any portion of the loss recognized on the actual or deemed sale or exchange of the distressed assets that is attributable to the excess of basis over FMV of the distressed assets at the time such assets were contributed to the partnership, the allocation of any of such loss to the U.S. partners is unreasonable, and that portion of such loss should be allocated to the alleged partners that purportedly

Exhibit A - Explanation of Items
**KISLEV PARTNERS, L.P.**
Final Partnership Administrative Adjustment Letter
Tax Year Ended - December 31, 2002 TIN: 98-0174122

contributed the distressed assets, in accordance with the authority of Section 1.704-3(a)(8) and (10) of the Income Tax Regulations. Accordingly, in the alternative, the claimed loss relating to the distressed assets should be allocated to the partners that contributed the distressed assets.

11. Alternatively, it has not been established that any of the alleged partners of the partnership were at-risk under Section 465 of the Internal Revenue Code with regard to the activities conducted by the partnership during the taxable period(s) in issue.

12. Alternatively, it has not been established that claimed losses relating to the distressed assets were not passive activity losses subject to the limitations of Section 469 of the Internal Revenue Code.

Penalties (applicable to all adjustments)

1. The adjustments to the partnership items determined herein are attributable to a tax shelter within the meaning of Section 6662(d)(2)(C)(ii) of the Internal Revenue Code. The partnership and its purported partners/members had, as a significant purpose, the avoidance or evasion of federal income tax, lacked substantial authority for the positions taken, and did not have a reasonable belief that those positions were more likely than not the correct treatment of such items.

2. It is also determined that all of the underpayments of tax resulting from the adjustments of partnership items made herein are attributable to (1) a substantial understatement, (2) a gross valuation misstatement, and/or (3) negligence or disregard of rules or regulations.

3. In addition, it is determined that the partnership and its partners did not have reasonable cause and good faith for any of the resulting underpayments, or that any other exceptions to the accuracy-related penalty apply.

4. It is therefore determined that the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items determined herein. The components of the accuracy-related penalty are imposed as follows:

Exhibit A - Explanation of Items

**KISLEV PARTNERS, L.P.**

Final Partnership Administrative Adjustment Letter

Tax Year Ended - December 31, 2002 TIN: 98-0174122

A. a 40 percent penalty is imposed on any portion of the underpayment that is attributable to a gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B. a 20 percent penalty is imposed on any portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty is imposed on the portion of the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty is imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3) and 6662(e) of the Internal Revenue Code.