# In the United States Court of Federal Claims

**No. 07-625T**
**(Filed August 13, 2008)**

| | |
|---|---|
| **KISLEV PARTNERS, L.P., by and through NESIM BAHAR, a Partner Other than the Tax Matters Partner,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | **Jurisdiction; Tax Equity and Fiscal Responsibility Act of 1982; Notice of Final Partnership Administrative Adjustment; 26 U.S.C. § 6226(e)(1); Statutory Interpretation; 1 U.S.C. § 1; Amount of Requisite Deposit; Good Faith Effort to Comply; Timing for Correction of Shortfall in Deposit.** |

N. Jerold Cohen, Sutherland, Asbill & Brennan, LLP, Atlanta, Georgia, for Plaintiff. Lewis S. Wiener, Amanda F. Wilson, and Avi Stadler, Sutherland, Asbill & Brennan, LLP, Of Counsel.

David R. House, U. S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for Defendant. Nathan J. Hochman, David Gustafson, Steven I. Frahm, and Joseph B. Syverson, U.S. Department of Justice, Tax Division, Of Counsel.

---

## AMENDED OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

---

**WILLIAMS**, Judge.

Plaintiff, Kislev Partners, L.P. ("Kislev"), by and through its indirect partner Nesim Bahar, challenges a Notice of Final Partnership Administrative Adjustment ("FPAA") for the 2002 tax year, pursuant to section 6226 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA").[1] On its 2002 tax filings, Kislev -- a limited partnership and real estate developer in New York City --

[1] Unless indicated otherwise, all short form citations to the U.S. Code refer to Title 26 as codified in 2000.

claimed an ordinary loss of approximately $140 million. This loss was attributable to the conversion of approximately 1.3 million euros (with a purported built-in loss) into U.S. dollars following Kislev's redemption of an interest in a foreign business entity. The IRS disallowed the $140 million loss finding that the transaction constituted an abusive tax shelter known as a distressed asset/debt transaction (DAD) and that the transaction and the partnership were shams, lacked economic substance, and were undertaken for the purpose of tax avoidance.

This matter comes before the Court on Defendant's motion to dismiss this action for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims. In seeking dismissal, Defendant argues that Plaintiff failed to make a sufficient deposit to bring an action in this Court. Section 6226(e)(1) requires a deposit in the amount by which the petitioning partner's tax liability would be increased if his individual returns were made consistent with the FPAA. In attempting to satisfy this statutory requirement, Plaintiff made a deposit of $9,500, arguing that section 6226(e)(1) requires Mr. Bahar to deposit only his increased tax liability for the 2002 tax year.[2] However, Mr. Bahar's increased tax liability reflected in the FPAA spans three additional years -- 2003 through 2005 -- because he carried forward deferred losses. Defendant calculates the required deposit to be $2,905,046, exclusive of penalties and interest, based upon the tax liability for these three outlying years. Because the statute requires a deposit of the total tax liability and not only the liability in the year the FPAA was issued, the Court concludes that the required deposit was $2,905,046.

Section 6226(e)(1) authorizes the Court to deem the jurisdictional deposit requirements to have been satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall is timely corrected. Because Plaintiff's calculation was based upon a reasonable, albeit erroneous, interpretation of law, the Court denies Defendant's motion to dismiss and grants Plaintiff leave to correct the shortfall in its deposit within 60 days.

## **Background**[3]

Kislev was acquired on October 31, 2002, by three limited liability companies -- Bahar-USA Developments, LLC, Sen-Kis, LLC, and Games, LLC -- and one individual, Izak Senbahar. Compl. ¶ 16. Mr. Bahar, as the owner of Bahar-USA Developments and a partner other than the tax matters partner, filed this action. Id. ¶ 2. The primary assets of Kislev at the time of acquisition were a real estate contract for rental property in New York City and euros with a fair market value of approximately $1.3 million and a purported built-in loss of approximately $140 million. Id. ¶¶ 17, 22-25. The euros derived from an investment in a foreign entity that operated duty-free stores and other airport businesses -- which allegedly experienced significant losses as a result of the

---

[2] Mr. Bahar's tax liability for 2002 is zero, but he deposited $9,500 "out of an abundance of caution."

[3] This background is derived from Plaintiff's Complaint and documents supporting the parties' motion papers.

establishment of the European Union. Id. ¶ 22.

On or after December 12, 2002, Kislev converted the euros to dollars, claiming a basis of $142,016,024. Id. ¶ 24. On its 2002 tax return, Kislev claimed an ordinary loss of $140,636,109 on this conversion, relying upon the advice of both a national law firm and a tax advisor. Id. ¶¶ 25-26. Kislev attempted to defer most of these losses, reporting a loss of $6,551,884 on its 2002 Schedule K while reporting a "deferred [loss] due to basis limit" in the amount of $134,084,225 on its Form 1065, which it included in its capital accounts. Compl. Ex. A; Kusmirek Decl. ¶ 4.

Mr. Bahar subsequently filed Form 1040 individual returns for the years 2002 through 2005 in which he carried forward his share of Kislev's 2002 partnership losses. Def.'s Exs. 3-6. For 2002, Mr. Bahar claimed a section 988 loss of $655,188. Def.'s Ex. 3 at 13. For 2003, Mr. Bahar claimed a section 988 loss of $4,165,409 and a net operating loss carryover of $571,738. Def.'s Ex. 4 at 16. For 2004, Mr. Bahar claimed a section 988 loss of $460,108 and a net operating loss carryover of $571,738. Def.'s Ex. 5 at 14. For 2005, Mr. Bahar reported a section 988 loss of $3,276,681 and a net operating loss carryover of $1,607,404. Def.'s Ex. 6 at 1, 9. These claimed losses substantially reduced Mr. Bahar's taxable income for those years.

On March 28, 2007, the IRS issued an FPAA adjusting Kislev's partnership items for the 2002 tax year. Compl. Ex. B. The FPAA disallowed the deferred loss of $134,084,225 and the claimed loss of $6,551,884 on Kislev's 2002 returns, finding that Kislev had not established any basis in these distressed assets. Compl. Ex. B; Kusmirek Decl. ¶ 6. In addition, the FPAA imposed accuracy-related penalties for gross valuation misstatement, negligence, substantial understatement of tax, and substantial valuation misstatement. Compl. Ex. B.

Plaintiff filed the instant action by and through Mr. Bahar, an indirect partner as the owner of Bahar-USA Developments, on August 22, 2007, pursuant to section 6226 of TEFRA.[4]

## Discussion

### Motion To Dismiss Standard

When deciding a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court assumes all factual allegations to be true and construes "all reasonable inferences in plaintiff's favor." Hall v. United States, 74 Fed. Cl. 391, 393 (2006) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). Plaintiff must establish subject-matter jurisdiction by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). In

[4] Notice partners may file a readjustment petition with the Court of Federal Claims or a district court if the tax matters partner declines to do so within 90 days of the mailing of an FPAA. Section 6226(b)(1). Indirect partners, subject to the same conditions as other partners, may file petitions for readjustment. Treas. Reg. § 301.6226(e)-1.

determining whether Plaintiff has met its burden, "the [c]ourt may look beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).

**Plaintiff's $9,500 Deposit Does Not Satisfy The Statutory Requirement**

This Court has "jurisdiction to hear and to render judgment upon any petition under section 6226 . . . of the Internal Revenue Code . . . ." 28 U.S.C. § 1508. Section 6226(f) gives this Court

> jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

To invoke jurisdiction, however, the filing partner must provide the requisite deposit set forth in section 6226(e)(1). This statute, entitled "Jurisdictional requirement for bringing action in . . . Court of Federal Claims," provides that a partner may seek judicial review of an FPAA in the Court of Federal Claims

> only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment.

See Schumacher Trading Partners II v. United States, 72 Fed. Cl. 95, 100 (2006) ("[T]he partner filing the petition must first deposit, with the Secretary of the Treasury, the amount of the tax liability at issue if the partnership items are reconciled in accordance with the FPAA."); Transpac Drilling Venture v. United States, 26 Cl. Ct. 1245, 1249 (1992) ("In cases before the [Court of Federal Claims] or district court, § 6226(e)(1) requires that the partner filing the readjustment petition deposit with the Secretary of the Treasury the increase in the partner's liability which would occur if the partner's return were made consistent with the FPAA.").

Prior to filing its complaint, Plaintiff's filing partner, Mr. Bahar, made a deposit of $9,500 for purposes of satisfying section 6226(e)(1). In calculating this figure, Mr. Bahar included only his increased tax liability for the 2002 tax year -- the year for which the FPAA was issued -- and not the other years through which he carried over losses. Nevertheless, Mr. Bahar reported the losses disallowed by the FPAA in computing his personal tax liability not only for the 2002 tax year, but also for 2003, 2004, and 2005.

Under section 6226(e)(1), a deposit must be made in "the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment." (emphasis added). Plaintiff, emphasizing the use of the singular form, "return," argues that section 6226(e)(1) cannot be construed to require a deposit of tax liability stemming from multiple "returns," filed for more than a single year. Defendant, on the other hand, stresses that the deposit must be based on the entirety of the partner's "tax liability," citing precedent that tax liability is typically calculated on a multi-year basis.

As Defendant posits, the overarching statutory requirement is that the total "tax liability" be deposited as a jurisdictional prerequisite to maintaining suit in this forum. This fundamental requirement that the partner's total "tax liability" resulting from the FPAA be deposited trumps the use of the singular form "return," which might otherwise suggest limiting the deposit to the amount reflected on a single year's return. While much of the time a partner's tax liability resulting from an FPAA may be reflected in the single "return" covering the same year as the FPAA, this -- as the instant case illustrates -- will not always be the case. Plaintiff's interpretation that it need only deposit the tax liability for the single year in which the FPAA was issued would stand the statute on its head, since the petitioning partner has incurred no tax liability for the year of the FPAA and would require no deposit in contradiction to the basic statutory premise. Cf. Coltec Industries, Inc. v. United States, 454 F.3d 1340, 1354 (Fed. Cir. 2006) (recognizing that "the economic substance doctrine is not unlike other canons of construction that are employed in circumstances where the literal terms of a statute can undermine the ultimate purpose of the statute" and quoting United States v. Native Vill. of Unalakleet, 188 Ct. Cl. 1, 411 F.2d 1255, 1258 (Ct. Cl. 1969) ("[W]e may at times construe a statute contrary to its 'plain language' if a literal interpretation makes a discrimination for which no rational ground can be suggested."). Mr. Bahar's total tax liability reflected in the FPAA is not zero -- it is some $2.9 million. Mr. Bahar's election to defer his tax losses to future years and thus incur no FPAA-related tax liability for 2002, should neither dictate the amount of his deposit -- reducing it to nothing -- nor undermine the primary statutory purpose of § 6226(e)(1) which equates the amount of that deposit with total tax liability.

Moreover, Plaintiff's reliance on the singular form, "return," is misplaced, for "it is well established, by statute and by judicial decision, that legislative terms which are singular in form may apply to multiple subjects or objects." Norman J. Singer, Statutes and Statutory Construction § 47:34 (7th ed. 2007). Indeed, the opening section of the United States Code provides: "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise, words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1 (2000); see also SKF USA, Inc. v. United States, 263 F.3d 1369, 1381 (Fed. Cir. 2001) (finding pursuant to 1 U.S.C. § 1 that the phrase "a foreign like product" within a statute extended to plural foreign like products). As such, the term "return" in § 6226(e)(1) properly encompasses the plural "returns" and permits the term "tax liability" to be construed as encompassing multiple returns spanning multiple years.

In holding that "tax liability" for purposes of section 6226(e)(1)'s jurisdictional deposit

should be calculated over multiple years, this Court follows the normal rule of statutory construction that "'identical words used in different parts of the same act are intended to have the same meaning.'" SKF USA, Inc., 263 F.3d at 1381 (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995)); see also Singer, Statutes and Statutory Construction § 47:28 (7th ed. 2007) ("Where the identical word or phrase is used more than once in the same act, there is a presumption that it has the same meaning throughout."). A reading of "tax liability" as spanning multiple years is consistent with the interpretation of this term in another TEFRA provision. Section 6231(a)(6) defines "computational adjustment" as "[t]he change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." (emphasis added). As courts have recognized, tax liability for purposes of computational adjustments is properly calculated based upon years both prior and subsequent to the partnership year in dispute. Olson v. United States, 37 Fed. Cl. 727, 738 (1997), aff'd, 172 F.3d 1311, 1318 (Fed. Cir. 1999). So too, in Grapevine Imports, Ltd. v. United States, 77 Fed. Cl. 505, 513 (2007), plaintiff's entire increased tax liability derived from the year subsequent to the year for which the FPAA was issued. In the context of non-TEFRA actions as well, the Federal Circuit has recognized that tax liability is properly determined as spanning multiple years -- even when the statute of limitations bars actions on such liability for some years in question. See Barenholtz v. United States, 784 F.2d 375, 380-81 (Fed. Cir. 1986) (tax liability may include calculations based upon upward adjustments carried forward from years for which the statutory limitations period for assessments has already passed).

In sum, to invoke this Court's jurisdiction under section 6226(e)(1), a partner filing a readjustment petition must deposit the full amount of the partner's increased tax liability. In calculating this amount, the filing partner must include his increased tax liability for all years in which his individual returns are affected by adjustments to partnership items in the FPAA. Mr. Bahar has failed to do so, and until this is corrected, the Court lacks jurisdiction to review Plaintiff's petition for readjustment.

**Plaintiff Made A Good Faith Effort To Satisfy The Jurisdictional Deposit**

The deficiency in Plaintiff's deposit does not warrant immediate dismissal. Section 6226(e)(1) provides temporary respite to a plaintiff who has made a good faith effort to comply with the statutory requirements: "The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected."

Defendant contends that the sizeable amount of the shortfall -- a deficiency of $2,895,546 leaving almost 99.7% of the required amount yet to be paid -- is in itself indicative that Plaintiff acted in bad faith. The Court disagrees. In Maarten Investerings P'ship v. United States, 2000-1 U.S. Tax Cas. (CCH) ¶ 50,241, 83,663 (S.D.N.Y. 2000), the District Court for the Southern District of New York determined that a plaintiff whose deposit was deficient by over $18 million met the standard for a good faith attempt to satisfy section 6226(e)(1)'s jurisdictional deposit requirement. Despite the fact that the plaintiff had turned down an invitation from the government to review the amount of the deposit prior to filing its action, as well as suggestions that plaintiff's refusal to do so

was based on tactical maneuvering, the Maarten court found that the plaintiff's error was made in good faith.

Plaintiff's petitioning partner in the present case has offered a reasonable explanation for his mistaken calculation -- he interpreted section 6226(e)(1) to require payment of the tax liability solely for the year for which the FPAA was issued. Based upon the totality of the circumstances, this Court concludes that Plaintiff's petitioning partner made a good faith attempt to satisfy the jurisdictional requirements of section 6226.

Plaintiff has not challenged the mathematical calculation by which Defendant reached its proffered amount of $2,905,046. The Court therefore accepts Defendant's calculation, and subtracting Plaintiff's $9,500 deposit, computes the shortfall to be $2,895,546.

Section 6226(e)(1) does not specify what constitutes a "timely" correction of a deposit shortfall. In Maarten, the District Court allowed plaintiff 60 days to correct its shortfall of over $18 million. 2000-1 U.S. Tax Cas. (CCH) ¶ 50,241 at 83,663; see also Span Hansa Mgmt v. United States, 91-1 U.S. Tax Cas. (CCH) ¶ 50,213, 87,870 (W.D. Wash. 1991) (allowing 90 days to correct a shortfall of $66,121). Considering these decisions and the entire record herein, the Court directs Plaintiff to correct the shortfall within 60 days of the date of this Opinion.

## Conclusion

Defendant's motion to dismiss is **DENIED**, provided that Plaintiff's petitioning partner makes an additional deposit of $2,895,546 with the Secretary of the Treasury with notice of filing to the Clerk of the Court within **60 days** from the date of this Opinion.

The Court will conduct a telephonic status conference on **October 16, 2008, at 11:00 a.m. ET.**

s/ Mary Ellen Coster Willams
**MARY ELLEN COSTER WILLIAMS**
**Judge**